**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

LILLIAN COLON-MCKNIGHT,
an individual,

Case No.:

Plaintiff,

v.

WORLD OMNI FINANCIAL CORP. d/b/a
SOUTHEAST TOYOTA FINANCE,
ELDER FORD OF TAMPA, LLC,
EXPERIAN INFORMATION
SOLUTIONS, INC.,
a foreign for-profit corporation,
EQUIFAX INFORMATION
SERVICES, LLC,
a foreign limited liability company, and
TRANS UNION, LLC,
a foreign limited liability company,

Defendants.

_______________________________________/

# COMPLAINT

**COMES NOW**, Plaintiff, LILLIAN COLON-MCKNIGHT (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby sues Defendants, WORLD OMNI FINANCIAL CORP. d/b/a SOUTHEAST TOYOTA FINANCE (hereinafter, "TOYOTA"), ELDER FORD OF TAMPA, LLC (hereinafter, "FORD"), EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter, "Experian"), EQUIFAX INFORMATION SERVICES, LLC (hereinafter, "Equifax"), and TRANS UNION, LLC (hereinafter, "Transunion") (hereinafter

collectively, "Defendants"). In support thereof, Plaintiff states:

**PRELIMINARY STATEMENT**

1. This is an action brought by an individual consumer for damages for Toyota's violation of the Florida Consumer Collection Practices Act ("FCCPA") wherein Toyota improperly attempted to collect an alleged consumer loan account from Plaintiff that she did not owe.

2. Further, Toyota placed this account on Plaintiff's consumer credit report and in Plaintiff's consumer credit file as maintained by Experian, Equifax, and TransUnion.

3. More specifically, despite Plaintiff advising Toyota that she did not owe the alleged account, and after Plaintiff disputed Toyota's reporting of such erroneous information directly to Experian, Equifax and TransUnion- Toyota *continued* to demand payment from Plaintiff on the alleged debt and continued to report the account with a significant balance due and as past-due.

4. Furthermore, this is an action for damages for Experian's, Equifax's, and TransUnion's violations of the Reporting Act, 15 United States Code, Section 1681 *et seq*. (hereinafter, the "FCRA") FCRA wherein Experian, Equifax, and TransUnion each continued to incorrectly report Plaintiff as the individual responsible for the alleged Toyota account after Plaintiff repeatedly advised that such account was not owed, and after Plaintiff provided information to Experian,

Equifax, and TransUnion proving the same.

5. Finally, this is an action against Ford for breach of contract.

## JURISDICTION, VENUE & PARTIES

6. Jurisdiction of this Court arises under 28 United States Code, Section 1331 as well as pursuant to the FCRA, 15 United States Code Section 1681, *et seq*., and supplemental jurisdiction exists permitting Plaintiff's FCCPA and breach of contract claims pursuant to 28 United States Code, Section 1367.

7. Defendants are subject to the jurisdiction of this Court as Defendants each regularly transact business in this District.

8. Venue is proper in this District as the acts and transactions described herein occur in this District.

9. At all material times herein, Plaintiff is a natural person residing in Hillsborough County, Florida.

10. At all material times herein, Toyota does business in Florida.

11. At all material times herein, Ford does business in Florida.

12. At all material times herein, Experian is a for-profit corporation existing under the laws of the state of Ohio with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

13. At all material times herein, Equifax is a foreign limited liability company existing under the laws of the state of Georgia, with its principal place of

business located at 1550 W Peachtree Street, Atlanta, Georgia 30309.

14. At all material times herein, Trans Union is a foreign limited liability company existing under the laws of the state of Delaware with its principal place of business located at 555 West Adams Street, Chicago, Illinois 60661.

**FCRA STATUTORY STRUCTURE**

15. Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 United States Code, Section 1681b.

16. Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

17. Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge—and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute. *Id.* at § i(a).

18. Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer. *Id.* at § i(a)(4).

19. Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation. *Id.* at § i(a)(5).

20. Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis. *Id.* at §

s-2(b).

21. Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

22. Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o.

**FDCPA & FCCPA STATUTORY STRUCTURE**

23. The FCCPA is a state consumer protection statute, modeled after the Fair Debt Collection Practices Act, 15 United States Code, Section 1692 (hereinafter, "FDCPA"), a statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy. 15 U.S.C., §§ 1692(a) and (e); Fla. Stat. §§ 559.55 and 559.77(5).

24. The FCCPA and FDCPA impose civil liability on any creditor/person as well as any debt collector, and both statutes prohibit engaging in particular violative conduct in connection with collecting consumer debts. 15 U.S.C. § 1692(a)(6); Fla. Stat. § 559.55(5).

25. Specifically, the FCCPA and FDCPA prohibit unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information regarding a debt *directly or indirectly* to any person *through any medium*." 15 U.S.C. § 1692(a)(2); Fla. Stat. § 559.55(2) (emphasis added).

26. For example, the FCCPA prohibits a person from attempting to collect by communicating with a consumer in a manner reasonably expected to abuse or harass a consumer or by communicating in an attempt to collect a debt that is known to be illegitimate or by asserting a legal right that does not exist. *See* Fla. Stat. §§ 559.72(7) and (9).

## **GENERAL ALLEGATIONS**

27. At all material times herein, Plaintiff is an alleged "consumer" or "debtor" as defined by the FCRA, Section 1681a(c) and the FCCPA, Section 559.55(8) because she is an individual and allegedly obligated to pay a debt.

28. At all material times herein, Toyota, itself and through its subsidiaries, regularly extends contracts for automobile loans—to consumers residing in Hillsborough County, Florida.

29. At all material times herein, Toyota is a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

30. At all material times herein, Toyota is a "person" subject to the FCCPA, Section 559.72. *See* Fla. Stat. § 559.55(3); *Schauer v. General Motors Acceptance Corp*., 819 So. 2d 809 (Fla. 4th DCA 2002).

31. At all material times herein, Toyota attempts to collect and report information concerning an alleged automobile loan referenced by account number ending -16884 (hereinafter, the "Alleged Debt" or the "Account").

32. At all material times herein, Plaintiff's credit reports and credit files as maintained by Experian, Equifax, and TransUnion did not contain any other negative, derogatory, or adverse tradeline accounts other than the Account at issue in this case.

33. At all material times herein, Toyota furnishes, reports, and publishes specific details of consumers alleged outstanding or delinquent debt accounts to compel or coerce the consumer to either satisfy an alleged balance owed, or suffer the consequences of delinquent accounts, such as higher interest rates on consumer loans or complete denial of credit.

34. At all material times herein, Experian, Equifax, and TransUnion are each a "consumer reporting agency" as defined in 15 United States Code, Section

1681a(f) of the FCRA and each regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports. Experian, Equifax, and Trans Union each disburse such consumer reports to third parties under contract for monetary compensation.

35. At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

36. All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

### CREATION OF THE DEBT

37. In 2018, Plaintiff entered into an automobile lease, which was subsequently assigned to Toyota for servicing.

38. In or around August 2020, Plaintiff traded in the automobile to Ford in exchange for another automobile from Ford.

39. As part of the trade-in, Ford agreed to pay off the remaining lease amount owed to Toyota.

40. The payoff check cleared Toyota's bank in or around August 21, 2020.

41. Ford also agreed to return the trade-in vehicle back Toyota.

42. In June 2021, Plaintiff received a call from Toyota in which Toyota

inquired about the whereabouts of the trade-in vehicle.

43. Plaintiff explained that she traded in the vehicle to Ford and did not know the whereabouts of the vehicle.

44. In July 2021, Toyota sent a collection letter to Plaintiff in attempts to collect the debt. A true and correct copy of the letter is attached as **Exhibit A.**

45. Further, Toyota placed collection calls to Plaintiff in July 2021 in attempts to collect the debt.

46. During each call, Plaintiff explained that she returned the vehicle to Ford and was not responsible for the debt.

**PLAINTIFF'S DISPUTES TO TOYOTA REGARDING THE ACCOUNT AND TOYOTA, EXPERIAN, EQUIFAX, AND TRANSUNION'S DISPUTE RESPONSES**

47. In August 2021, Plaintiff discovered that Toyota had placed this debt on her credit files.

48. As such, Plaintiff submitted online disputes to Transunion, Experian, and Equifax in August 2021.

49. Toyota, Transunion, Experian, and Equifax each received Plaintiff's online dispute.

50. In response, Toyota verified the debt as accurate to Transunion, Experian, and Equifax.

51. In September 2021, Plaintiff, with the assistance of her undersigned

counsel, sent Toyota, Transunion, Experian, and Equifax another dispute letter.

52. In response, Toyota fixed the erroneous reporting on Plaintiff's Transunion, Experian, and Equifax credit reports.

**DAMAGES**

53. As a result of Defendants' attempts to collect and reporting of the Debt, Plaintiff further dealt with the stress and anxiety of feeling hopeless, believing that she will be denied credit as a result of the erroneous and incorrect reporting of the Account reflecting the Alleged Debt asserted as owed by Toyota if she needs to obtain credit in the near future, and that Plaintiff would either be denied credit or pay higher interest rates in the event she could obtain financing.

54. Overall, Plaintiff suffered damage to her otherwise pristine credit reputation as a result of Defendants' conduct.

55. Plaintiff retained Swift, Isringhaus & Dubbeld, P.A. for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay her attorneys a reasonable fee for their services.

56. The FCRA, Sections 1681n or 1681o, or both, provide for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Toyota, Experian, Equifax, and Transunion.

57. The FCCPA provides for the award of up to $1,000.00 statutory

damages, actual damages, punitive damages, declaratory and injunctive relief, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Toyota. *See* Fla. Stat. § 559.77.

58. Ford's conduct was a direct and proximate cause of, as well as a substantial factor in, causing serious injuries, damages, and harm to Plaintiff.

59. As a result of Defendants' conduct, actions, and inactions, Plaintiff was deterred from making credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, she did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

60. Additionally, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite Plaintiff's exhaustive efforts to convey to Toyota that she did not open the Account including supplying Defendants with supporting documentation, Plaintiff must simply endure Defendants' reporting of the Account and Toyota's ongoing attempts to collect the Alleged Debt.

**COUNT ONE:**
**BREACH OF CONTRACT**
**(As to Ford Only)**

Plaintiff re-alleges paragraphs one (1) through sixty (60) as if fully restated herein and further states as follows:

61. Plaintiff entered into a contract with Ford in August 2020.

62. As part of the contract, Ford was to return the traded-in vehicle back to Toyota.

63. Ford did not return the traded-in vehicle until on or around July 2021, nearly a year after Plaintiff traded in the vehicle to Ford.

64. Ford's conduct was a direct and proximate cause of, as well as a substantial factor in, causing serious injuries, damages, and harm to Plaintiff.

65. Ford's actions and inactions entitle Plaintiff to actual damages as well as attorneys' fees and costs.

## COUNT TWO:
## UNLAWFUL DEBT COLLECTION PRACTICE – VIOLATION OF FLORIDA STATUTES, SECTION 559.72(9)
## (As to Toyota Only)

Plaintiff re-alleges paragraphs one (1) through sixty (60) as if fully restated herein and further states as follows:

66. Toyota is subject to, and violated the provisions of, Florida Statutes, Section 559.72(9) by attempting to collect the Alleged Debt with knowledge that the Alleged Debt is not legitimately owed by Plaintiff and by asserting the existence of a legal right that Toyota knows does not exist.

67. Specifically, Plaintiff was not and is not personally liable for the

Alleged Debt, because she traded in the vehicle at issue to Ford; Ford was responsible for returning the vehicle to Toyota.

68. Plaintiff repeatedly provided the above-listed information to Toyota.

69. As such, Toyota possessed actual knowledge that Plaintiff did not legitimately owe the Alleged Debt yet Toyota continued to communicate directly with Plaintiff in an attempt to collect the Alleged Debt.

70. As such, Toyota attempted to collect the Alleged Debt—an amount known to be illegitimate—and asserted a legal right that does not exist in its communications made in an attempt to collect the Alleged Debt from Plaintiff.

71. As a direct and proximate result of Toyota's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT THREE**
**FAIR CREDIT REPORTING ACT –**
**<u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)</u>**
**(As to Toyota Only)**

Plaintiff re-alleges paragraphs one (1) through sixty (60) as if fully restated herein and further states as follows:

72. Toyota is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly re-investigate Plaintiff's disputes, failing to review all relevant information regarding the same, and failing to request that Experian, Equifax, and TransUnion

delete the Account from Plaintiff's credit reports and credit file after re-investigating Plaintiff's repeated disputes.

73. As described above, Plaintiff was not and is not personally liable for the Alleged Debt, because she traded in the vehicle at issue to Ford; Ford was responsible for returning the vehicle to Toyota.

74. Despite Toyota receiving notice of Plaintiff's disputes from Plaintiff, Experian, Equifax, and TransUnion—including the information and documents referenced in the above paragraph—Toyota willfully and/or negligently failed to request that Experian, Equifax, and TransUnion delete the tradeline associated with the Account and continued to report derogatory, late payment information to Experian, Equifax, and TransUnion including significant balances due, and as significantly past-due.

75. Toyota's credit reporting is materially misleading.

76. Toyota's re-investigations were not conducted in good faith.

77. Toyota's re-investigations were not conducted reasonably.

78. Toyota's re-investigations were not conducted using all information and documents reasonably available to Toyota.

79. As a result of Toyota's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was deterred from making credit applications as she believed he would not be able to obtain favorable

credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

80. Toyota's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

81. Toyota's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT FOUR:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)**

Plaintiff re-alleges paragraphs one (1) through sixty (60) as if fully restated herein and further states as follows:

82. Experian, Equifax, and TransUnion are each subject to, and each violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in

the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

83. Experian, Equifax, and TransUnion willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports regarding the Account.

84. Specifically, despite Plaintiff advising Experian, Equifax, and TransUnion that Plaintiff did not owe this Debt—Experian, Equifax, and TransUnion each continued to report the Account with a balance due, with a balance past-due, resulting in the Account being reported as a derogatory, negative, or adverse account in Plaintiff's credit reports and credit files.

85. Further, Experian, Equifax, and TransUnion willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when re-investigating Plaintiff's disputes of the above-referenced inaccuracies contained in her Experian, Equifax, and TransUnion credit reports and credit file.

86. Such reporting of the Account is false and evidences Experian's, Equifax's, and TransUnion's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

87. As a result of Experian's, Equifax's, and TransUnion's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit

worthiness, was deterred from making credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

88. Experian's, Equifax's, and TransUnion's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

89. Experian's, Equifax's, and TransUnion's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT FIVE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i(a)(1)**

Plaintiff re-alleges paragraphs one (1) through sixty (60) as if fully restated herein and further states as follows:

90. Experian, Equifax, and TransUnion are each subject to, and each

violated the provisions of, 15 United States Code, Section 1681i(a)(1), by failing to conduct reasonable re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files.

91. Specifically, Experian, Equifax, and TransUnion each willfully and/or negligently refused to properly re-investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

92. Experian, Equifax, and TransUnion did not request any documents from SRM corroborating information furnished and verified by SRM to Experian, Equifax, and TransUnion regarding Plaintiff and the Account in response to any of Plaintiff's Disputes.

93. As such, Experian's, Equifax's, and TransUnion's re-investigations were not conducted in such a way as to assure whether information regarding Plaintiff and the Account was inaccurate and each failed to subsequently update and remove the inaccurate information in Plaintiff's credit reports and credit files.

94. Such reporting is false and evidences Experian's, Equifax's, and TransUnion's failure to conduct reasonable re-investigations of Plaintiff's repeated disputes.

95. Experian's, Equifax's, and TransUnion's reinvestigations of Plaintiff's disputes were not conducted reasonably.

96. Experian's, Equifax's, and TransUnion's reinvestigations merely copied and relied upon the inaccurate Account information conveyed by Toyota.

97. Experian's, Equifax's, and TransUnion's reinvestigations of Plaintiff's disputes were not conducted in good faith.

98. Experian's, Equifax's, and TransUnion's reinvestigation procedures are unreasonable.

99. Experian's, Equifax's, and TransUnion's re-investigations of Plaintiff's disputes were not conducted using all information reasonably available to Experian, Equifax, and TransUnion.

100. Experian's, Equifax's, and TransUnion's reinvestigations were *per se* deficient by reason of these failures in Experian's, Equifax's, and TransUnion's reinvestigations of Plaintiff's disputes and the Account.

101. As a result of Experian's, Equifax's, and TransUnion's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was deterred from making credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline

account.

102. Experian's, Equifax's, and TransUnion's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

103. Experian's, Equifax's, and TransUnion's actions in violation of 15 United States Code, Section 1681i(a)(1), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT SIX:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i(a)(4)**

Plaintiff re-alleges paragraph one (1) through sixty (60) as if fully restated herein and further states as follows:

104. Experian, Equifax, and TransUnion are each subject to, and each violated the provisions of, 15 United States Code, Section 1681i(a)(4), by failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments.

105. Specifically, despite Experian, Equifax, and TransUnion receiving Plaintiff's Disputes—Experian, Equifax, and TransUnion each *continued* to report the Account with derogatory, late payment information, causing the Account to be

reported as a derogatory, negative, or adverse account.

106. Experian's, Equifax's, and TransUnion's failure to review and consider all information received in Plaintiff's disputes was done in bad faith.

107. As a result of Experian's, Equifax's, and TransUnion's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was deterred from making credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

108. Experian's, Equifax's, and TransUnion's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

109. Experian's, Equifax's, and TransUnion's actions in violation of 15 United States Code, Section 1681i(a)(4), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT SEVEN:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i(a)(5)**

Plaintiff re-alleges paragraphs one (1) through sixty (60) as if fully restated herein and further states as follows:

110. Experian, Equifax, and TransUnion are each subject to, and each violated the provisions of, 15 United States Code, Section 1681i(a)(5), by failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified.

111. Specifically, despite Experian, Equifax, and TransUnion receiving Plaintiff's Disputes—neither Experian, Equifax, nor TransUnion deleted the Account from Plaintiff's credit reports and credit files.

112. Instead, Experian, Equifax, and TransUnion continued to report the Account in Plaintiff's credit reports and files as belonging to Plaintiff with a significant balance due as well as derogatory, late payment information regarding the Account.

113. As a result of Experian's, Equifax's, and TransUnion's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was deterred from making credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage her credit score

with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

114. Experian's, Equifax's, and TransUnion's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

115. Experian's, Equifax's, and TransUnion's actions in violation of 15 United States Code, Section 1681i(a)(5), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a. Judgment declaring that Toyota violated the FCCPA;

b. Judgment against Toyota for maximum statutory damages under the FCCPA;

c. Judgment declaring that Ford breached the contract;

d. Judgment against Ford for actual damages;

e. Judgment against Toyota, Experian, Equifax, and Transunion for maximum statutory damages for violations of the FCRA;

f. Actual damages in an amount to be determined at trial;

g. Compensatory damages in an amount to be determined at trial;

h. Punitive damages in an amount to be determined at trial;

i. An award of attorney's fees and costs; and

j. Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT, ISRINGHAUS & DUBBELD P.A.**

/s/ *Jon P. Dubbeld*

**Aaron M. Swift, Esq., FBN 0093088**
**Jordan T. Isringhaus, Esq., FBN 0091487**
**Jon P. Dubbeld, Esq., FBN 105869**
**Sean E. McEleney, Esq., FBN 125561**
8380 Bay Pines Blvd.
St. Petersburg, FL 33709
Phone: (727) 755-3676
Fax: (727) 255-5332
aswift@swift-law.com

jisringhaus@swift-law.com
jdubbeld@swift-law.com
smceleney@swift-law.com
*Counsel for Plaintiff*